15215

CHAMBERS v. ROCK HILL PRINTING AND FINISHING CO.

(13 S. E. (2d), 281)

*Messrs. Wilson & Wilson* and *Hart & Moss* for appellant,

*Messrs. Jack C. White* and *R. B. Hildebrand* for respondent.

February 17, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE BAKER.

Prior to February 28, 1939, the respondent was in the employ of appellant. On that date he voluntarily quit the employment of appellant without giving any notice of his intention so to do, and until about the first of June, 1939, appellant did not know that he had been unemployed for any period of time, but was under the impression that he had immediately entered the employ of the White Oil Company. It developed that respondent did not commence to work for the White Oil Company until about the 1st of April, 1939, and in the early part of June, 1939, by reason of information received by respondent that he was entitled to unemployment compensation for a portion of the time he was unemployed, he applied to the South Carolina Unemployment Compensation Commission for compensation. This Commission filled out blanks for his application therefor and he was instructed to have same signed by appellant. He went to the place of business of appellant for the purpose of having these applications signed and also for the purpose of collecting a small balance coming to him, due by appellant, having been informed by a Mr. Whittle, who had an official connection with appellant on an occasion when respondent was servicing the automobile of Mr.

Whittle at the White Oil Company, that he had a small balance coming to him. When respondent requested Mr. Whittle to sign the separation blanks, Mr. Whittle refused to do so, stating that his last employer, Mr. White, was the proper one to do so, Mr. Whittle being under the impression that respondent went directly from the employ ment of appellant to the employment of White Oil Company, and that there had been a separation of employment betwixt White Oil Company and respondent. Respondent told Mr. Whittle that he was still in the employ of White Oil Company and that he was trying to collect for the time when he quit the employ of appellant until he went to work for White Oil Company, but Mr. Whittle refused to sign the separation papers, and according to the testimony of respondent said he would not do so until he had to. Mr. Whittle's testimony was to the effect that he told him if he was the proper party to sign he would do so.

Mr. Whittle further testified that separation notices were not furnished by appellant to the Unemployment Commission, nor to the employee, where the employee voluntarily quit; that the construction appellant placed upon Rule 10 of the Unemployment Compensation Commission in force at the time respondent voluntarily left its employ did not require a notice to be given either to the said Commission or the employee, if the employee voluntarily quit.

The Unemployment Compensation Commission refused the claim of respondent on the ground that it had not been filed in time, without going into the merits. It is established by the testimony that if respondent's claim had been filed in time he would have been entitled to receive $20.40.

Respondent brought his action against appellant, alleging actual and punitive damages in the sum of $6,000.00, and that "the defendant company did willfully, intentionally, deliberately, negligently and maliciously and in flagrant defiance of the laws of the State of South Carolina and to the damage of this plaintiff fail and refuse to furnish the

Unemployment Compensation Commission with a wage and separation notice, which was a prerequisite to the plaintiff's recovery of benefits, that fact being well known to defendant company." And "That as a result of the defendant company's intentional violation of its duty and responsibility as above alleged to furnish the plaintiff with instructions, as provided by law, and found on the back of the worker's copy of the wage and separation notice, the plaintiff was without any knowledge or information as to how or why or where or when to file his claim for unemployment benefits. Not knowing of his rights, as was anticipated by the defendant, the plaintiff failed to file his claim within the time specified by the Act and was denied benefits."

It is the contention of respondent that he was proceeding at common law and respondent's action was thus treated by appellant in the Court below and on the appeal to this Court. We express no opinion as to whether respondent had a cause of action at common law.

Upon the trial of the case appellant moved for a nonsuit generally, and failing in that, for a nonsuit as to punitive damages, which motion.was refused. At the conclusion of all testimony appellant moved for a directed verdict on substantially the same grounds, and more particularly as to punitive damages, which motion was refused. The jury rendered a verdict against appellant in the sum of $20.40 actual damages, and $500.00 punitive damages.

Appellant comes to this Court alleging error in the refusal of the trial Judge to grant its motion for nonsuit as to punitive damages and its motion for a directed verdict as to punitive damages, but raises no issue as to actual damages. The Court is therefore limited in this opinion to the issue raised by the appeal, whch issue relates solely to punitive damages.

The Unemployment Compensation Act (No. 946, Acts of 1936, page 1716, Statutes at Large, Vol. 39), in Section 2, declares the public policy of the State regarding

unemployment and limits such "public policy" to "involuntary unemployment" and to "persons unemployed through no fault of their own;" and it is significant that said Section 2 begins: "As a guide to the interpretation and application of this act * * *."

At the time respondent voluntarily quit the employ of appellant, there was in force and effect Regulation 10 of the Rules and Regulations of the Unemployment Compensation Commission, reading as follows:

"A. Except as provided in Rule 6 B (1), each employer shall give to each worker separated from covered employment in his service, permanently or for an indefinite period of time or for an expected duration of seven days or more, a Wage and Separation Notice. The first carbon copy of this separation notice shall, within two days after such separation, be handed to such worker, or mailed to his last known address, if delivery in person is impracticable. Such notice shall contain * * *. Within two days following such separation of an individual from service, the employer shall mail to or file with the South Carolina Unemployment Compensation Commission at Columbia, South Carolina, the original copy of such separation notice. Any employer who fails either to furnish such separation notice to a worker separated from his employ and to the South Carolina Unemployment Compensation Commission at Columbia, South Carolina, or to indicate thereon that such worker may be disqualified for benefits under any provision of Section 3 of the Act, shall be presumed to have admitted that such worker is not disqualified under any of the said provisions. Each employer shall be charged with the duty and responsibility of obtaining in advance by application to the South Carolina Unemployment Compensation Commission, Columbia, South Carolina, such number of wage and separation notice forms and printed instructions as may be required for the proper observance of this Regulation."

Section 6 of the Unemployment Compensation Act pro-

vides that "An employer shall give to each of his employees at the time such employee becomes totally unemployed, a printed statement of the rules prescribed by the commission relating to the filing of claims for benefits."

As hereinbefore stated, respondent bases his cause of action on the alleged failure of appellant to comply with Regulation 10, and that portion of Section 6 of the Act just above referred to.

Appellant justifies its failure to give respondent and the Unemployment Compensation Commission notice of separation, and to respondent a printed statement of the rules prescribed by the Commission relating to the filing of claims for benefits on the grounds (1) that it did not know for several days that respondent had quit its employment, and when it learned that he had, was under the impression that he had immediately gone to work for another concern, and (2) that it was under no legal duty to furnish.to either the Commission or to respondent a separation notice and rules and regulations for that respondent had voluntarily quit his employment, unless it desired to disqualify him for unemployment benefits, and this appellant did not desire to do.

We are of the opinion that under the stated purpose of the Unemployment Compensation Act as set forth in Section 2 thereof, and under the wording of Regulation 10, appellant had good ground for so construing the law, the respondent having voluntarily quit the employ of appellant, certainly sufficient to remove any· stigma of wilfully or maliciously having failed to comply with the law. And the amendment of Rule 10 in October, 1939, merely has the effect of clarifying old Rule 10, and definitely placing this identical construction upon the law by the Unemployment Commission.

This was a comparatively new law containing extremely intricate provisions, and the Court is not willing to go to the extent of inferring wilfulness on

the part of a person failing to accurately construe the intricate provisions of a new and untried law.

While there is testimony by the respondent that the appellant refused to sign his separation papers until compelled to do so, yet accepting such statement as true, it can mean no more than that appellant was standing on its construction of the Act and Rule, which as aforesaid, it had reasonable justification for such construction. In fact, were the writer construing the rule as it existed at the time of this occurrence, and in connection with the stated purpose of the Act, he would reach the same conclusion as did appellant.

The exceptions of appellant relating to the refusal of the trial Judge to direct a verdict as to punitive damages are sustained; and the judgment for punitive damages is reversed.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES CARTER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE G. B. GREENE concur.